WILLIAM COPELAND, Appellee, v. EUGENE FERRIS, JOHN HALL et al, Appellants.

Personal Injury: ASSIGNMENT OF ERROR: HOW STATED. Assignments of error must clearly and specifically point out the error complained of, and must be separately stated.

Same: INSUFFICIENCY OF. An assignment of error referring to two separate instructions relating to independent matters is not sufficiently explicit to be considered on appeal.

Evidence: ADMISSIBILITY OF. The admissibility of certain testimony considered and held rightly excluded by the trial court.

Reasonable Care: QUESTION FOR JURY. Whether plaintiff was justified as a reasonably prudent man in continuing his work when he knew the machinery was defective is a question for the jury.

*Appeal from Keokuk Superior Court.*—HON. R. P. MILLER, Judge.

THURSDAY, DECEMBER, 18, 1902.

ACTION at law to recover damages for personal injuries received by plaintiff while operating an ice-loading plant

at the town of Nashville, in Lee county.   Trial to a jury, verdict and judgment for plaintiff, and defendants appeal. —*Affirmed.*

*J. E. & T. A. Craig* for appellants.

*J. F. Smith* for appellees.

DEEMER, J.—Defendants were engaged in harvesting ice at the town of Nashville.   To accomplish it, they erected a platform parallel with the railway switch tracks, the top of which was level with the bottom of an ordinary railway car.   A wooden chute ran from the top of this platform down to a canal from which the ice was being taken.   The center of this chute, upon which the ice was to pass, was from twenty-four to twenty-six inches wide, and had sides constructed of planks about two by eight inches, placed on edge.   The bottom of this runway was composed of slats laid lengthwise, with sufficient space between them to let slush ice fall through, so as not to impede the passage of large cakes.   On either side of t.is space for ice was a runway about twenty inches in width, composed of planks laid lengthwise; and cleats were nailed across these planks, so that those who desired to use them should have a more secure footing.   Outside of the runway was a hand rail.   At the foot of the chute, and extending out on a level into the water, was what was known as the "water box," by means of which the ice was brought into position in line with the chute.   The motive power for raising the cakes of ice up this chute was a stationary engine located near the foot of the chute.   This engine operated two revolving drums, from which ropes led to the top of the inclined chute, there passed over pulleys, and thence down the incline to the water box.   What is known as a "jack" was attached to the end of each rope, —there being two,—which consisted of a pair of iron hooks which grappled a cake of ice either in the sides or at the back

Eight or ten cakes of ice were placed in line in the water box, and the operator of the jack attached it to the one farthest from the foot of the chute, and the one thus grappled pushed those ahead of it up the incline, through the power furnished by the engine to the rope to which the jack was attached. The jacks had handles, by means of which the operator carried them down the incline, placed them behind the ice, and steadied them as they passed up the chute. At the time plaintiff received his injuries, he was operating one of these jacks for the defendants. He testified that when he was injured he was riding upon one of the jacks, which was taking up a load of ice, and that, when part way up the incline, the rope to which the jack was attached parted, and he was precipitated into the runway, behind the ice, which came down upon him, and caused the injuries of which he complains. Plaintiff claims that the jack was antequated and defective, and that the rope to which the jack was attached was old, worn, and rotten, and that these defects resulted proximately in his injuries. He also says that he complained of the defect to the defendants, who were his employers, and that they repeatedly promised to repair the same. Defendants' main defense was contributory negligence. These were the issues on which the case was tried, and the jury returned a verdict for plaintiff, and, in addition thereto, answered certain special interrogations, as follows: "Int. 1. Was Mr. Copeland riding on the jack when he was hurt? Ans. Yes. Int. 2. Was the runway on the side the proper place for the jackman to be when he was taking up a load of ice? Ans. "Yes."

The case came to us on assignments of error, and we have had difficulty, on account of the numerous amendments, to discover just what they are. The only ones argued, as amended, seem to be as follows: "(2) Because the court erred in overruling the motion of defendants, made at the close of plaintiff's testimony, asking that the

jury be instructed to find for defendants,—particularly, in not sustaining said motion upon the fourth reason stated in said motion." The original motion referred to was based on seven grounds, four of which were entirely separate and distinct. "(3) Because the court erred in overruling defendant's motion to instruct the jury to find for the defendants at the close of the testimony, and erred in refusing to give instruction No. 1 asked by the defendants, for the reason that the testimony of William Copeland shows that at the time that the injury occurred he was riding upon the jack, with one foot on the ice, instead of holding the jack with his hands and walking up the run way, and in so doing he was guilty of contributory negligence." The motion therein referred to was based on seven grounds, four of which were distinct and independent: "(4) Because the special findings returned by the jury are inconsistent with the general verdict, and show a state of facts deduced from the evidence negativing the general verdict, in that said findings show that, at the time he was hurt, plaintiff was riding upon the jack, and that he was not going up upon the runway, which was the proper way to take the ice up, and therein he was guilty of contributory negligence. (5) Because the verdict is not sustained by sufficient evidence, and because the undisputed evidence of plaintiff himself that he was riding on the jack bars a recovery. (6) Because the undisputed evidence shows that the plaintiff was guilty of contributory negligence in riding on the jack, which was an act so palpably negligent that it bars a recovery." "(13) Because the court erred in excluding the evidence of witnesses John Hall, Eugene Ferris, William Harris, Willis Carpenter, Chris Locke, Toy Inman, and George Tucker that it was more dangerous to ride upon the jack, in taking up a load of ice, than to walk upon the runway. (14) Because the court erred in excluding the evidence of witness Eugene Ferris as to the reason why plaintiff, William

Copeland, was not discharged prior to the time of his receiving his injuries." "(16) Because the court refused to allow Mr. Ferris to testify as offered on pages 73 and 74 of the abstract." "(21) Because the court erred in overruling the motion for judgment notwithstanding the verdict, and also in overruling the motion for a new trial. Particularly in not sustaining the motion for judgment notwithstanding verdict, upon the third and fourth reasons stated in motion, and in not sustaining the motion for a new trial upon the fifth, eighth, ninth, and fourteenth reasons stated in said motion. (22) Because the court erred in giving instructions Nos. 14 and 22 given by the court to the jury. And the court erred in giving each of said instructions, in this: that the court failed in each of these instructions, 14 and 22, to instruct the jury that plaintiff had no right to rely upon the promise to repair or renew the defective appliances, which promise had already been broken, and that the court failed to instruct the jury in each of said instructions, 14 and 22, that plaintiff had no right to rely upon a promise to repair or renew defective appliances, when the danger attendant upon the use of such defective appliances was so open, obvious, and immediate that an ordinarily prudent man would have avoided it"

It is manifest that Nos. 2, 3, 5, and 21 of the assignments are wholly insufficient, and cannot be considered. *Huss v. Railway Co.*, 113 Iowa, 343, and cases cited; *Shoemaker v. Turner*, 117 Iowa, 340.

The fourth and sixth do not refer to any rulings of the trial court, and point out no errors committed by it. They are simply statements of "becauses," and present

1. ASSIGN-
MENTS of
error: how
stated.

nothing for our consideration. An assignment of error must clearly and specifically point out the very error complained of, and, among several points made in demurrer, motion, instructions or rulings, the one or those relied upon must be separately stated. Code, section 4136; *Feister v. Kendt*, 92 Iowa, 1;

*Snola v. McCaffrey*, 83 Iowa, 760; *Duncombe v. Powers*, 75 Iowa, 185; *Dairy v. Railway Co.*, 113 Iowa, 716.

The thirteenth is an omnibus assignment, and is therefore insufficient. *Stove Works v. Hammond*, 94 Iowa, 694.

The fourteenth and sixteenth are probably sufficient, and will be considered during the course of this opinion.

This disposes of all save the twenty-second. That would undoubtedly be sufficient, but for the fact that it refers to two separate instructions, viz., the fourteenth 2. SAME: insuf- and the twenty-second. If they related to ficiency of. the same subject-matter, then we would be constrained to hold the assignment sufficient, but in this case they do not. One refers to the effect of a complaint by plaintiff of the defective condition of an appliance, and of defendants' promise to repair that defect, and the other to the duty of defendants to keep their appliances in repair, and of plaintff's right to presume that defendants had done their duty in this respect. As the instructions complained of relate to two independent matters, the assignment is insufficient. *Faivre v. Manderschied*, 117 Iowa, 724.

We have, then, but one question to consider, and that the refusal of the court to permit the witness Ferris to testify that defendant Hall told him (witness) to discharge 3. EVIDENCE: plaintiff because he (plaintiff) persisted in admissibility of. riding upon the jack after having been told not to do so; that he (Ferris) attempted to discharge plaintiff, but that all of the jackmen threatened to quit work if plaintiff was discharged; that John Hall then instructed witness to discharge all of the jackmen and obtain another set of jackmen; and that thereupon all of the employes who were working at the chute threatened to quit work if the said jackmen were discharged, and that, if said employes had quit work, it would have seriously delayed and interrupted the work of furnishing ice, which the defendants were under contract to furnish to St. Louis parties; and that the defendants were so prevented from

discharging plaintiff. It would be a sufficient answer to defendants' argument to say that the court made no ruling on this offer, and consequently there is nothing here to consider. But we find that objections to questions seeking this same information were sustained and exception taken. The object of this evidence was to show that defendant wished to discharge plaintiff because "he rode the jack," but did not dare to do so because of fear of a strike. Ferris was permitted to testify, without objection, that he told plaintiff and others not to ride the jack, and that they did not obey orders. This was all defendant was entitled to, as it showed knowledge on the part of plaintiff of the danger to be apprehended from such conduct, and, if believed by the jury, would have demanded a verdict for the defendants. There is nothing in the case which called for an explanation as to why the defendants did not discharge the plaintiff; and to have permitted the receipt of such evidence would have introduced a collateral issue, likely to obscure the main points, and to divert the attention of the jury into an investigation of the merits or demerits of the proposed strike. There was no error in the ruling. With reference to the instructions complained of, we may say that, considered abstractly, they are correct and applicable to facts disclosed by the record. If defendants desired more explicit ones, they should have asked them.

At the time the plaintiff received his injuries, defendants were engaged in putting in a new rope in place of the one which was being operated by another man, who 4. REASONABLE care: jury question. was working on the same chute; and it was for the jury to say whether or not plaintiff was justified, as a reasonably prudent man, in continuing his work with the defective rope on defendants' promise to repair.

These are the only questions we may properly consider, and, finding no error, the judgment is AFFIRMED.